IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAN AM EQUITIES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | JURY DEMAND |
| | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PAN AM EQUITIES, INC. ("Plaintiff") and files this *Plaintiff's Original Complaint and Jury Demand,* and for its causes of action against LEXINGTON INSURANCE COMPANY ("Defendant") would respectfully show unto the Honorable Court the following:

*I. Nature of Action*

1. In the aftermath of Hurricane Harvey, Plaintiff suffered more than $6.7 million in flood damage to two of its Houston commercial properties, located at 777 Preston Street ("777 Preston") and 930 Main Street ("930 Main"). Neither property suffered wind or hail damage.

2. Plaintiff had in place a commercial property insurance policy (the "Policy") with Defendant, policy number 025031662, for which it had paid nearly $2 million. The Policy provided Plaintiff with coverage for Flood losses, subject to a $100,000 deductible per occurrence (or $1 million per location, in certain instances).

3. After Hurricane Harvey, Plaintiff timely notified Defendant of its loss, and otherwise complied with the Policy's requirements.

4. Defendant began to adjust the claim. Then, many months later, Defendant changed course and advised Plaintiff that the Flood loss was purportedly subject to a much larger Windstorm and Hail deductible.

5. By its plain terms, however, the Windstorm and Hail deductible is only "deducted from adjusted loss due to Windstorm and Hail." It does not apply to adjusted loss due to Flood.

6. If Defendant is allowed to apply the Windstorm and Hail deductible to Plaintiff's Flood loss, it would negate Plaintiff's collectible Flood loss for the two properties.

7. Defendant's application of the Windstorm and Hail deductible to Plaintiff's Flood loss violated the plain terms of the Policy.

8. Plaintiff brings this action seeking damages for Defendant's wrongful actions, including for breach of contract, breach of duty of good faith and fair dealing, and violations of Chapters 541 and 542 of the Texas Insurance Code.

## II. Parties

9. Plaintiff is a New York corporation with its primary place of business at 18 East 50th Street, New York, NY.

10. Defendant Lexington Insurance Co. is a Delaware corporation with its principal place of business at 99 High Street, Boston, Massachusetts.

## III. Jurisdiction and Venue

11. This Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) as Plaintiff and Defendant are citizens of different States, and the amount in controversy exceeds $75,000.00 excluding interest and costs.

12. Venue in this district is appropriate pursuant to 28 U.S.C.A. § 1391 as it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and because a substantial part of the property that is the subject of the action is situated here.

### *IV. Factual Background*

13. Plaintiff purchased the Policy from Defendant in 2016. The Policy had a two-year term, running from June 30, 2016 to June 30, 2018. A true and correct copy of the Policy is attached hereto as Exhibit A.

14. The Policy provided Flood coverage for certain of Plaintiff's properties, including certain properties located in Houston, Texas. The Policy includes a $100,000 deductible for loss due to Flood, except that with respect to certain locations, it provides that the deductible shall be $1,000,000 per location.

15. On or about August 27, 2017, in the aftermath of Hurricane Harvey, the 777 Preston property suffered not less than $6,600,347.25 in Flood damage. The 930 Main property suffered not less than $182,565.86 in Flood damage.

16. Plaintiff provided Defendant with timely notice of its claim, and in all respects satisfied its obligations under the Policy.

17. Defendant initially began to adjust Plaintiff's claim, in accordance with the terms of the Policy.

18. Months later, however, Defendant changed course and asserted that the Policy's much larger Windstorm and Hail deductible applied to Plaintiff's Flood claim—despite the absence of *any* wind or hail damage to the two properties.

19. The Policy does not define "Windstorm," but the common and accepted definition of that term does not include loss from flood damage.

20. More specifically, paragraph 10 of the Policy provides as follows:

### 10. **DEDUCTIBLES**

*"In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss in a single occurrence greater than the applicable deductible specified below, and only for its share of that greater amount.*

*Unless otherwise stated below:*

> *A. When this Policy insures more than one location, the deductible will apply against the total loss covered by this Policy in any one occurrence.*
>
> *B. If two or more deductibles provided in this Policy apply to a single occurrence, the total to be deducted will not exceed the largest deductible applicable, unless otherwise provided.*
>
> *C. All loss, damage, and/or expense arising out of any one occurrence shall be adjusted as one loss, and from the amount of each such adjusted loss shall be deducted the sum shown in the Schedule of Limits, Sub limits and Deductibles attached to and forming a part of this Policy;*

### *Policy Deductible(s)*

> A. *$100,000 all coverage combined, except as follows:*
>
> B. *[Description of Earthquake deductible omitted]*
>
> C. **Flood:** *The following sum(s) shall be deducted from any adjusted loss due to Flood;*
>
>> *$100,000 Per Occurrence except as follows:*
>>
>> *(1) With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of* **100-year flooding**, *as defined by the Federal Emergency Management Agency (if these locations are not excluded elsewhere in this policy with respect to the peril of flood), the deductible shall be **$1,000,000 per location***.
>
> D. **Windstorm and Hail**: *The following sum(s) shall be deducted from any adjusted loss due to Windstorm and Hail;*
>
>> *$100,000 Per Occurrence except as follows:*

4

> *(1) **5%** of the total insurable values at the time of loss at each location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm or Tropical Depression), in Tier I Counties including Florida, regardless of the number of coverages, locations or perils involved (including but not limited to all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum deductible of **$250,000** any one occurrence."*

21. Thus, under the plain terms of the Policy, a deductible of $100,000 applies to a claim for Flood, which in certain instances shall be $1 million per location.

22. Nevertheless, Defendant asserted that it could apply a Windstorm and Hail deductible—5% of the total insurable values of the properties at the time of loss—to Plaintiff's claim for Flood damage to 777 Preston and 930 Main. That amount would significantly exceed the Policy's Flood deductible.

23. Defendant's assertion is false. The deductible for Windstorm and Hail does not apply to Plaintiff's claim.

24. As noted above, the deductible for Windstorm and Hail provides:

> *"The following sum(s) shall be deducted from any adjusted loss due to Windstorm and Hail"*

25. Thus, by its own terms, the Windstorm and Hail deductible applies only to the amount of loss that was "due to Windstorm and Hail." The Windstorm and Hail deductible does not apply to adjusted loss due to Flood. Because all of the damage at 777 Preston and 930 Main was attributable to Flood, the Windstorm and Hail deductible therefore does not apply to Plaintiff's claim arising from those two properties.

26. By improperly applying the Windstorm and Hail deductible to Plaintiff's claim for Flood loss, Defendant effectively negated Plaintiff's collectible loss for the damage inflicted

5

at 777 Preston and 930 Main.  Defendant has refused to pay Plaintiff any money for its Flood losses at the two properties, despite covered Flood loss in excess of $6.7 million.

27. By letter dated April 16, 2018, and May 14, 2018, counsel for Plaintiff wrote an analysis of Defendant's coverage position, which was provided by Plaintiff to Defendant on or about those dates.  The letters made clear that Defendant had no reasonable basis for applying the Windstorm and Hail deductible to Plaintiff's Flood claim.

28. In response to Plaintiff's letters, Defendant issued letters to Plaintiff dated April 30, 2018, and June 5, 2018.  In these letters, Defendant misrepresented to Plaintiff the terms of the Policy.

29. For example, in its letters, Defendant asserted that it was relying on a supposed "Named Storm" deductible.  The Policy does not contain a "Named Storm" deductible.  Instead, the Windstorm and Hail deductible contains a provision increasing the amount that "shall be deducted from any adjusted loss *due to Windstorm and Hail*" that arises out of a "Named Storm."

30. If Defendant had intended to define "Windstorm" as a peril that included loss from flood damage, or to impose a deductible that applied to all perils caused by a Named Storm, then it needed to provide clear and unambiguous language to that effect in the Policy.  Defendant failed to do so.

31. Defendant's decision, to not define "Windstorm" and to omit a "Named Storm" deductible when the Policy was issued, precludes its attempt now to shoehorn Flood loss into the Windstorm and Hail deductible.

32. In its letters, Defendant also cited Section 10B of the Policy, which states that:

6

> If two or more deductibles provided in this Policy apply to a single occurrence, the total to be deducted will not exceed the largest deductible applicable, unless otherwise provided.

33. But this provision does not alter the plain meaning of the language contained in the Flood deductible and in the Windstorm and Hail deductible. By its own terms, the Windstorm and Hail deductible does not apply to loss due to Flood, and therefore is not "applicable" to Plaintiff's claim for Flood loss at 777 Preston and 930 Main.

34. Moreover, through the use of the phrase "will not exceed," Section 10B signifies that it is designed to *limit* the amount of the deductible, not to expand it.

35. Finally, in its letters, Defendant also cited and relied upon the language of the insurance binder. But as Defendant is well aware, the terms and conditions of the Policy control and supersede any conflicting provisions found in the binder.

36. On or about August 24, 2018, Plaintiff provided Defendant with notice under Texas Insurance Code § 541.154 of Defendant's violation of Chapter 541 of that Code.

37. Defendant's wrongful denial of Plaintiff's claim, on the alleged basis that the Windstorm and Hail deductible applied to Plaintiff's Flood losses, constitutes a breach of contract; a breach of the common law duty of good faith and fair dealing owed to insureds; and a knowing violation of Chapters 541 and 542 of the Texas Insurance Code.

38. Plaintiff therefore requests: damages in the amount of its Flood loss (less the Flood deductible); that the damages be trebled; attorneys' fees, and court costs; pre- and post-judgment interest at the rate of no less than 18%; and such other and further relief as is just under the circumstances.

## IV. Causes of Action

### First Cause of Action
### Breach of Contract

39. Plaintiff reasserts the allegations set forth elsewhere in the Complaint as if fully set forth herein.

40. The Policy is a valid and enforceable contract between the parties.

41. Plaintiff has performed and is prepared to perform all of its obligations under the Policy.

42. Under the terms of the Policy, Defendant was required to cover Plaintiff's Flood losses resulting from Hurricane Harvey, less an appropriate deductible for Flood loss.

43. Defendant breached its contract by failing to cover Plaintiff's Flood loss, less the appropriate deductible for Flood loss.

44. As a result of Defendant's breach, Plaintiff has suffered damages of not less than $6.7 million, subject to the application of an appropriate deductible for Flood loss.

### Second Cause of Action
### Breach of Duty of Good Faith and Fair Dealing

45. Plaintiff reasserts the allegations set forth elsewhere in the Complaint as if fully set forth herein.

46. As a result of the relationship between Defendant and Plaintiff, Defendant had a duty to deal fairly and in good faith with Plaintiff

47. There was no reasonable basis for Defendant to apply the Windstorm and Hail deductible to Plaintiff's claim for Flood loss.

48. Defendant breached its duty of good faith and fair dealing by applying the Windstorm and Hail deductible to Plaintiff's claim for Flood loss.

49. Plaintiff suffered damages as a result of Defendant's breach of its duty of good faith and fair dealing in an amount not less than $6.7 million, subject to the application of an appropriate deductible for Flood loss.

### Third Cause of Action
### Breach of Texas Insurance Code Section 541

50. Plaintiff reasserts the allegations set forth elsewhere in the Complaint as if fully set forth herein.

51. Defendant has violated section 541 of the Texas Insurance Code.

52. Defendant violated section 541(1) of the Texas Insurance Code by misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue.

53. Defendant was put on notice that its liability was reasonably clear by Plaintiff's letters to Defendant, which demonstrated that the Windstorm and Hail deductible did not apply to Plaintiff's Flood loss.

54. Defendant violated section 541(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which Defendant's liability had become reasonably clear.

55. On or about August 24, 2018, Plaintiff provided Notice to Defendant under Texas Insurance Code § 541.154 of Defendant's violation of Chapter 541 of that Code.

56. Defendant knowingly committed its violations of section 541 of the Texas Insurance Code.

57. Section D(3)(F) of the Policy requires that any lawsuit be brought within one year of the inception of the loss. The limitations period created by Section D(3)(F) likely is extended by Texas law to two years from the date of inception of the loss.

58. Nevertheless, as a matter of caution, Plaintiff has filed suit within one year of the date of inception of the loss. Plaintiff reserves all rights to object to Defendant's attempt to restrict by contract the legally mandated statute of limitations.

59. Allowing 60 days to elapse from the date of the Notice under Texas Insurance Code § 541.154 would be impracticable due to the potential that the statute of limitations would expire.

### Fourth Cause of Action
### Breach of Texas Insurance Code Section 542

60. Plaintiff reasserts the allegations set forth elsewhere in the Complaint as if fully set forth herein.

61. Defendant violated Texas Insurance Code § 542.

62. Defendant violated Texas Insurance Code § 542 by knowingly misrepresenting to Plaintiff the content and meaning of the Policy.

63. Defendant further violated Texas Insurance Code § 542 by not attempting in good faith to effect a prompt, fair, and equitable settlement of Plaintiff's claim for which liability had become reasonably clear.

64. Defendant further violated Texas Insurance Code § 542 by compelling Plaintiff to institute a suit to recover an amount due under a policy by offering substantially less than the amount that ultimately will be recovered in this lawsuit.

WHEREFORE, Plaintiff requests that after final hearing, Plaintiff should have judgment against Defendant for:

1. Damages of not less than $6.7 million, subject to the application of an appropriate Flood deductible, in an amount to be determined by the trier of fact;

2. Treble damages;

3. Exemplary or punitive damages in an amount to be determined by the trier of fact as allowed by law and under Texas Insurance Code § 541;

4. Penalties at the rate of eighteen percent (18%) per year on the amount of the claim, as allowed under Texas Insurance Code § 542.060;

5. Plaintiff's reasonable attorneys' fees, including for pre-trial matters, trial and any appeal;

6. Pre-judgment and post-judgment interest at the highest rates allowed by law;

7. Costs of Court; and

8. Such other and further relief, both general and special, at law and/or in equity, to which Plaintiff may show itself to be justly entitled.

        Respectfully submitted,

  /s/ Martin Bienstock
**WEISBROD MATTEIS & COPLEY PLLC**
Joshua B. Katz
S.D. Tex. Bar No. 3185189
Martin Bienstock
S.D. Tex. Bar No. 3265151
1200 New Hampshire Ave. NW, Suite 600
Washington, DC 20036
Tel: (202) 499-7900
Fax: (202) 478-1795
Jkatz@WMCLaw.com
MBienstock@WMCLaw.com

and

**LERNER, ARNOLD & WINSTON, LLP**
Frank P. Winston, Esq.
S.D. Tex. Bar No. 3278434
475 Park Avenue South, 28th Fl.
New York, New York 10016
Tel: (212) 686-4655
Fax: (212) 532-3301
fwinston@lawpartnersllp.com