United States District Court
Southern District of Texas
**ENTERED**
May 02, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAN AM EQUITIES, INC., § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-18-2937 |
| § | |
| LEXINGTON INSURANCE CO., § | |
| Defendant. § | |

# **MEMORANDUM AND ORDER**

This insurance case is before the Court on the Motion for Summary Judgment [Doc. # 28] filed by Defendant Lexington Insurance Company ("Lexington"), to which Plaintiff Pan Am Equities, Inc. ("Pan Am") filed an Opposition [Doc. # 29]. Pan Am also filed a Motion for Partial Summary Judgment [Doc. # 30]. Lexington filed a consolidated reply in support of its own motion and in opposition to Pan Am's motion [Doc. # 33], and Pan Am filed a Reply [Doc. # 35] in support of its motion.

The Court has carefully reviewed the parties' briefing and the relevant insurance policy. Based on that review, and the application of governing legal authorities, the Court **grants** Lexington's Motion for Summary Judgment and **denies** Pan Am's Motion for Partial Summary Judgment.

## I.     BACKGROUND

Lexington issued Commercial Property Policy Number 025031662 (the "Policy") to Pan Am for the period June 30, 2016 through June 30, 2018. The Policy covered Pam Am's commercial properties in Houston, Texas, including an apartment building at 777 Preston Street and a commercial parking garage and retail building at 930 Main Street (collectively, the "Properties"). The Properties suffered more than $6.7 million in flood damage during Hurricane Harvey in August 2017. Pan Am filed a timely claim under the Policy for the damage to the Properties.

The Policy contains a section entitled "Deductibles." *See* Policy, Exh. B to Lexington's Motion, Declarations, § 10 (Bates No. 0011). The Deductibles section provides that if "two or more deductibles provided in this Policy apply to a single occurrence, the total to be deducted will not exceed the largest deductible applicable, unless otherwise provided." *See id.*, § 10.B. The general deductible under the Policy is $100,000.00. *See id.*, § 10(A).

One exception to the general deductible amount is for "any adjusted loss due to Flood." *See id.*, § 10(C). The Flood Deductible provides a $1,000,000.00 per location deductible for "locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding . . .." *See id.*, § 10(C)(1).

Another exception to the general deductible amount is for "any adjusted loss due to Windstorm and Hail" ("Windstorm Deductible"). *See id.*, § 10(D) (Bates No. 0012). The deductible under the general Windstorm Deductible is $100,000.00 per occurrence. *See id.* An exception to the general Windstorm Deductible provides a deductible of:

> 5% of the total insurable values at the time of loss at each location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm or Tropical Depression), in Tier 1 Counties including Florida, regardless of the number of coverages, locations or perils involved (including but not limited to all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum deductible of $250,000 any one occurrence.

*See id.*, § 10(D)(1) ("Named Storm Deductible").

It is undisputed that Harris County, Texas, is a Tier 1 County. *See* Policy, Tier 1 Counties Endorsement (Bates No. 0075). It is also uncontested that the total insurable value for 777 Preston was $190,500,000.00, and the total insurable value for 930 Main was $182,565.86. Lexington notified Pan Am that the Named Storm Deductible applied and, therefore, the deductible under the Policy exceeded the amount of Pan Am's claim for damage to the Properties. Pan Am does not contest these total insurable valuations for the Properties, and agrees that the Named Storm

Deductible, if applicable, would preclude recovery because the deductible would be greater than Pan Am's claim for damage to the Properties.

Pan Am filed this lawsuit against Lexington. Pan Am argues that the Named Storm Deductible cannot apply because it is located in the Windstorm Deductible portion of the Deductibles section, and Pan Am did not suffer wind damage to the Properties.

Pan Am asserts causes of action for breach of contract, breach of the duty of good faith and fair dealing, and breach of § 541 and § 542 of the Texas Insurance Code. The parties filed the pending motions, which have been fully briefed and are now ripe for decision.

## II.     LEGAL STANDARD FOR POLICY INTERPRETATION

Under Texas law, a court interprets an insurance policy using the same rules of interpretation and construction that apply to contracts generally. *See Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co.*, 833 F.3d 470, 474 (5th Cir. 2016) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)); *One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 271 (5th Cir. 2011); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). The court construes the policy to avoid any provision being rendered meaningless. *See Tesoro*, 833 F.3d at 474.

If an insurance contract "is worded so that it can be given a definite or certain legal meaning," it is not ambiguous. *Id.* (quoting *Schaefer*, 124 S.W.3d at 157). An insurance policy is ambiguous "only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Id.* (quoting *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015)). "The fact that the parties disagree as to coverage does not create an ambiguity." *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004); *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011); *Forbau v. Aetna Life Insurance Co.*, 876 S.W.2d 132, 134 (Tex. 1994). "Whether an insurance contract is ambiguous is a question of law." *Tesoro*, 833 F.3d at 474 (citing *Schaefer*, 124 S.W.3d at 157). If, but only if, a contract is ambiguous, the court must adopt the interpretation favoring the insured. *Id.* (citing *RSUI Indem.*, 466 S.W.3d at 118).

"Extrinsic evidence is admissible to determine the parties' intent only after the contract is determined to be ambiguous." *Liberty Mut. Ins. Co. v. Servisair, L.L.C.*, 698 F. App'x 770, 773 (5th Cir. 2017) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). Therefore, the Court may not consider extrinsic evidence offered by a party to create an ambiguity. *See id.* (citing *Nat'l Union*, 907 S.W.2d at 521 n.5); *see also Valmont Energy*, 359 F.3d at 774;

*Great Am. Ins. Co. v. ACE Am. Ins. Co.*, 325 F. Supp. 3d 719, 726 (N.D. Tex. 2018) ("Parol evidence is not admissible for the purpose of creating ambiguity"). Nor may the Court consider extrinsic evidence to contradict or to vary the meaning of unambiguous language in a written contract. *See Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018); *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017) (holding that courts may not rely on extrinsic evidence to make the language in a contract "say what it unambiguously does not say").

### III. ANALYSIS

The relevant Policy language is clear and unambiguous. The Named Storm Deductible is part of the Windstorm Deductible, § 10(D) of the Policy. Pan Am argues that the Windstorm Deductible does not apply because the Properties were not damaged by wind. Pan Am's argument is unpersuasive. The Windstorm Deductible applies to a loss "due to Windstorm . . .." *See* Policy, § 10(D). "Windstorm" is not a defined term under the Policy, but the clear Policy language does not limit a loss "due to Windstorm" to one caused only by wind.

The Named Storm Deductible excepts from the Windstorm Deductible a Named Storm, defined as a "storm that has been declared by the National Weather Service to be a Hurricane . . .." *See id.*, § 10(D)(1). To be ***excepted*** from the Windstorm

Deductible, a Named Storm, including a hurricane, logically must otherwise fall *within* the Windstorm Deductible.

Additionally, a hurricane is "a windstorm by any definition. Indeed, the definition of a hurricane is based on the strength of the winds it generates." *Balog, Inc. v. United States Fid. and Guar. Co.*, 2007 WL 1599748, *3 (S.D. Miss. June 4, 2007); *Broussard v. State Farm Fire & Cas. Co.*, 2007 WL 1438792, *2 (S.D. Miss. May 11, 2007); *see also Leonard v. Nationwide Ins. Co.*, 2006 WL 1674288, *1 (S.D. Miss. June 13, 2006) ("a hurricane is a type of windstorm").

The Named Storm Deductible in the Windstorm Deductible does not apply only to wind damage. Instead, the Named Storm Deductible provides unequivocally that it applies "regardless of the number of coverages, locations or perils involved (including but not limited to all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain)." Policy, § 10(D)(1). Therefore, by its clear and unambiguous language, the Named Storm Deductible in the Policy applies to any loss caused by a Named Storm, including a loss caused by flooding that resulted from the heavy rains associated with a Named Storm. *See Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 681 (5th Cir. 2011) (noting that the American Heritage Dictionary defines 'hurricane' as "usually involving heavy rains"). Pan Am's loss was caused by Hurricane Harvey's heavy rains. The Named Storm Deductible, which includes

hurricanes and the related peril of flooding, applies to Pan Am's claim under the Policy. *See id.* ("The National Weather Service declared Katrina and Rita to be hurricanes. Therefore, these events and the damage they caused . . . require use of the Named Windstorm Deductible.").

Pan Am complains that application of the Named Storm Deductible negates the lower Flood Deductible. This argument does not preclude application of the Named Storm Deductible, which is clear and unambiguous. "The purpose of a deductible is to shift some of the insurer's risk . . . to the insured, which is accomplished by setting a limit on the value of covered losses below which the insurer is not obligated to pay." *Penthouse Owners Assoc., Inc. v. Certain Underwriters at Lloyds, London*, 612 F.3d 383, 387 (5th Cir. 2010). Assuming that the Flood Deductible applies, the Policy provides that "[i]f two or more deductibles provided in this Policy apply to a single occurrence, the total to be deducted will not exceed the largest deductible applicable, unless otherwise provided." *See* Policy, § 10.B. The Policy contemplates that there may be circumstances where two deductibles apply, and provides that the deductible will not exceed the largest deductible. Stated differently, the Policy does not allow the total amount of both deductibles combined to be deducted and, instead, limits the amount deducted to the larger of the two applicable deductibles. This can "ensure that an insured cannot escape the applicability of the higher deductible" for a loss arising

out of a Named Storm, simply because the Named Storm caused flooding for which a lower deductible might also apply. *See, e.g., Penthouse Owners*, 612 F.3d at 387-88.

Pan Am offers the expert opinion of Louis G. Fey, Jr. regarding industry custom and usage in commercial first-party insurance policies. *See* Declaration of Louis G. Fey, Jr., Exh. C to Pan Am's Opposition [Doc. # 29-7], p. 4. Fey opines that the Named Storm Deductible applies only to the perils of wind and hail, and not to flooding. *See id.* at 6-7. As discussed above, the Named Storm Deductible in the Policy at issue in this case states clearly and unambiguously that it applies to loss or damage arising out of a Named Storm "regardless of the number of coverages, locations or perils involved" including the peril of flooding. *See* Policy, § 10(D)(1). Because the Named Storm Deductible is unambiguous and Fey's opinions are contrary to the unambiguous contract wording, the Court cannot consider extrinsic evidence such as that offered by the Fey Declaration.[1] *See Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018); *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017).

---

[1] Because the Court cannot consider extrinsic evidence to alter the unambiguous language in the Policy, Pan Am's Rule 56(d) request for discovery regarding (1) the drafting of the Policy language and (2) industry custom and usage is **denied**.

## IV.     CONCLUSION AND ORDER

The clear, unambiguous language of the Policy's Named Storm Deductible applies to the damage to the Properties caused by Hurricane Harvey and the heavy rains the hurricane brought to the Houston area.  Under the terms of the Named Storm Deductible, the amount claimed by Pan Am is below the applicable deductible.  As a result, it is hereby

**ORDERED** that Lexington's Motion for Summary Judgment [Doc. # 28] is **GRANTED** and Pan Am's Motion for Partial Summary Judgment [Doc. # 30] is **DENIED**.  The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **2nd** day of **May, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE